

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X
EWA MOSZCZYNSKA,

                          Plaintiff,

        – against –

URS CORPORATION LONG TERM DISABILITY
PLAN, and LIFE INSURANCE COMPANY OF
NORTH AMERICA,

                      Defendants.
————————————————————————X

**Civil
Action No.:**

**COMPLAINT**

Plaintiff, Ewa Moszczynska, by her attorneys, DEHAAN BUSSE LLP, for her Complaint against the Defendants, URS Corporation Long Term Disability Plan (the "LTD Plan") and Life Insurance Company of North America ("LINA"), hereby alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.      Under the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001, *et seq.*) ("ERISA"), the long-term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of a denial of benefits. Plaintiff has exhausted all administrative avenues of appeal and has received a final denial. Therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

3.    Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place or where a defendant resides or may be found.

4.    URS Corporation is the named Plan Administrator, with an office located at One Penn Plaza, Suite 610, New York, New York 10119.  Therefore, venue is proper in the Southern District of New York because that is where the LTD Plan is administered.

## NATURE OF ACTION

5.    This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee benefit welfare plan.

6.    The LTD Plan provides long term disability benefits to employees of URS Corporation ("URS").  As such, the LTD Plan is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, and ERISA applies to this action.  Said benefits were effective at all times relevant hereto.

7.    Claims for benefits are administered and paid through a Long Term Disability Policy, issued by Defendant, LINA.  Defendant, LINA, has made all of the claims decisions in this matter.

## STANDARD OF REVIEW

8.    The LTD Plan in force at the time Plaintiff became disabled does not contain a grant of discretion to LINA.

9.    As such, this Court must conduct a *de novo* review of the denial of Plaintiff's claim under Firestone Tire & Rubber Co. v. Bruch.

## THE PARTIES

10.     Plaintiff was born in January 1949, is presently 58 years old, and is a resident of Staten Island, New York.

11.     Defendant, the LTD Plan, is an employee benefit welfare plan, as defined by ERISA. URS is the named Plan Administrator and the agent for service of legal process, with a home office located at 100 California Street, Suite 500 San Francisco, California 94111-4529.

12.     Defendant, LINA, is an incorporated insurance company licensed to conduct the business of insurance in New York. Upon information and belief, LINA is the named Claims Administrator. LINA's address is 1601 Chestnut Street, TL 09 A, Philadelphia, Pennsylvania 19101.

## STATEMENT OF FACTS

Plaintiff's Occupation:

13.     Plaintiff became an employee of URS on December 7, 1987. Plaintiff continued working for URS through June 10, 2002, on which date she became disabled. As such, she was a covered participant in the LTD Plan.

14.     While Plaintiff attempted to return to work from December 9, 2002, through December 23, 2002, this must be considered an unsuccessful work attempt, and it, therefore, does not extend the Benefit waiting period because the return to Active Service was for less than 30 days.

15.     Prior to and including June 10, 2002, Plaintiff was employed by URS as Senior Civil Highway Engineer. In this capacity, Plaintiff was responsible for all aspects of highway/rail road/tunnel design; going on field trips to update and check information related to a project; adjusting and correlating data; making preliminary selections and adaptations of engineering alternatives; developing specific computations/plans; applying standard practices and techniques; following detailed processes of design; performing work requiring judgment in evaluation, selection and modification of standard procedures and criteria; using computers to

develop calculations and technical drawings; preparing specifications; tutoring entry level engineers; and checking final projects.

16.    Plaintiff's pre-disability income was $70,720.00 per year.

17.    For the period beginning prior to June 10, 2002, and at all relevant times hereto, Plaintiff, together with other regular employees of URS, was covered as a participant under the LTD Plan.

The Terms of the LTD Plan:

18.    The LTD Plan provides benefits to its participants through a Group Disability Policy (the "Group Policy") issued and administered by LINA.

19.    LINA, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. In this position, LINA could significantly reduce its operating expenses, and increase its profits, simply by denying claims. This would be a direct dollar-for-dollar effect. As such, LINA is operating under a significant conflict of interest which had a material effect on its decision on this claim.

20.    The Group Policy provides for payment of monthly benefits to eligible employees, and is designed to protect employees against a loss of earned income during periods of extended disability. Immediately prior to the onset of her disability, Plaintiff was an active employee working a minimum of 20 hours per week, and as such, was covered under the Group Policy.

21.    The monthly benefit is determined based on a set percentage (66.67%) of the Employee's monthly Covered Earnings rounded to the nearest dollar, with a maximum monthly benefit of $15,000. The monthly benefit is reduced by "Other Income Benefits," which includes benefits received pursuant to the Social Security Act.

22.    In Plaintiff's case, the Group Policy provides for a benefit of approximately $3,929.00 per month, less the amount of "Other Income Benefits," as defined by the Group Policy.

23.    Long Term Disability benefits are to commence after a "Benefit Waiting Period" of 180 days.

24.     In the instant matter, Plaintiff's Long Term Disability benefits commenced on December 18, 2002, the expiration of the Benefit Waiting Period, and were terminated by LINA on March 13, 2003.

25.     The maximum benefit period under the LTD Plan extends to the claimant's 65th birthday, provided the period of total disability begins prior to age 60, which is the case herein.

26.     The LTD Plan defines "Disability" as follows:

*An Employee is Disabled if, because of Injury or Sickness,*
*1.      he or she is unable to perform all the material duties of his or her occupation, or solely due to an Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and*
*2.      after Disability Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings.*

27.     The LTD Plan also requires a claimant to provide proof of Disability and must be under the care of a Physician.

28.     The LTD Plan gives LINA the right to examine Plaintiff. The LTD Plan states:

**Physical Examination and Autopsy**
*The Insurance Company, at its expense, will have the right to examine any person for whom a claim is pending as often as it may reasonably require. The Insurance Company may, at its expense, require an autopsy unless prohibited by law.*

29.     The LTD Plan requires Plaintiff to apply for apply "Other Income Benefits," which includes benefits received pursuant to the Social Security Act.

30.     Moreover, if Plaintiff does not apply for any "Other Income Benefit" (*e.g.* Social Security Disability benefits), LINA can penalize Plaintiff by assuming the receipt of the Other Income Benefit, estimating the amount of the "Other Income Benefit" and reducing the amount of the LTD benefit by that amount. The LTD Plan states:

*Assumed Receipt of Benefits*

*The Insurance Company will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them. These assumed benefits will be the amount the Insurance Company estimates the Employee (or his or her dependents, if applicable) may be eligible to receive. Disability benefits will be reduced by the amount of any assumed benefits as if they were actually received.*

*Except for any wage or salary for work performed while Disability Benefits are payable, this assumption will not be made if the Employee gives the Insurance Company proof of the following events.*
1.    *Application was made for these benefits*
2.    *A Reimbursement Agreement is signed*
3.    *Any and all appeals were made for these benefits or the Insurance Company determines further appeals will not be successful*
4.    *Payments were denied.*

*The Insurance Company will not assume receipt of, nor reduce benefits by, any elective, actuarially reduced, or early retirement benefits under such laws until the Employee actually receives them.*

31.    On October 9, 2003, Plaintiff signed a Reimbursement Agreement agreeing to "reimburse the full amount of any overpayment within 30 days after receiving the award" of an Other Income Benefit.

Plaintiff's Disability:

32.    Plaintiff was forced to stop working on June 10, 2002, due to erosive osteoarthritis of the hands, impairments of her feet, rotator cuff tendinitis, cervical disc disease, back impairments, reflex sympathetic dystrophy, post-traumatic stress disorder ("PTSD"), generalized anxiety disorder and major depression.

33.    Plaintiff was diagnosed with the above medical conditions by her various treating physicians.

34.    On June 21, 2002, Plaintiff underwent a first metatarsal biplanar osteotomy of the right foot, extensor tendon lengthening and flexor tendon lengthening. The post-operative diagnosis was hallus valgus of the right foot.

35.    On January 7, 2003, Ms. Moszczynska underwent a partial excision of the second metatarsal head, excision of the base of the proximal phalanx, extensor tenolysis, flexor tenolysis and an open metatarsal phalangeal joint capsulotomy. The post-operative diagnosis was osteoarthritis of the second metatarsal phalangeal joint of the right foot.

36.    In a Multiple Impairments Questionnaire dated March 16, 2006, Plaintiff's treating neurologist diagnosed her with reflex sympathetic dystrophy and disc disease of the cervical spine at C5-C6, with a guarded prognosis. The treating neurologist noted that Plaintiff

constantly suffers from pain and stiffness in the right wrist and hand, pain in the right arm, pain in the right leg and foot and pain in the neck and lower back.

37.    The treating neurologist further opined that Ms. Moszczynska can sit for less than one (1) hour total in an eight hour workday, stand/walk for less than one (1) hour total in an eight hour workday, she cannot lift/carry any weight, and must avoid wetness, humidity, temperature extremes, pushing, pulling, kneeling, bending and stooping.

38.    In a report dated December 30, 2003, treating Board Certified Rheumatologist diagnosed Ms. Moszczynska with erosive osteoarthritis of the hands, post surgical changes in the feet, rotator cuff tendinitis and possible seronegative inflammatory arthritis. In a Medical Source Statement, the treating rheumatologist stated that while Ms. Moszczynska can occasionally lift and carry up to ten (10) pounds and sit for about six (6) hours in an eight-hour workday, she can stand/walk for less than two (2) hours in an eight-hour workday – precluding even sedentary work.

39.    Plaintiff's treating Board Certified Psychiatrist, diagnosed her with PTSD and Generalized Anxiety and opined that she is totally disabled. The treating psychiatrist, in Psychiatric/Psychological Impairment Questionnaires dated October 18, 2004, and March 16, 2006, noted a Global Assessment of Functioning score of 50 and stated that Ms. Moszczynska suffers from poor memory, sleep disturbance, personality change, mood disturbance, emotional lability, recurrent panic attacks, anhedonia or pervasive loss of interest, psychomotor agitation or retardation, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, blunt, flat or inappropriate affect, decreased energy, intrusive recollections of a traumatic experience, persistent irrational fears, generalized persistent anxiety, somatization unexplained by organic disturbance and hostility and irritability.

40.    The treating psychiatrist further opined that Ms. Moszczynska has marked (*i.e.*, effectively precludes the individual from performing the activity in a meaningful manner) limitations in her abilities to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain

ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently.

41.    Additionally, the treating psychiatrist also noted moderate (*i.e.*, significantly affects but does not totally preclude the individual's ability to perform the activity) limitation in Ms. Moszczynska abilities to carry out simple one or two step instructions; make simple work related decisions; ask simple questions or request assistance; and travel to unfamiliar places or use public transportation. Finally, Dr. Brozyna stated that Ms. Moszczynska is incapable of even low stress, and she would likely be absent from work more than three (3) time a month.

42.    In a third Impairment Questionnaire dated August 30, 2006, the treating psychiatrist noted similar limitations and further stated that Plaintiff has difficulty with concentration and noted that Plaintiff's prescription medications cause somnolence, headaches and gastrointestinal problems.

43.    Moreover, a second psychiatrist, who examined Plaintiff on January 4, 2005, also stated that she is totally disabled and unable to function in any job in any capacity.

44.    The residual functional capacity assessments completed by Plaintiff's treating physicians indicate physical limitations which preclude even sedentary work. Moreover, the significant psychiatric limitations further reduce Ms. Moszczynska's ability to adequately function in a work environment.

45.    Plaintiff has received, and continues to receive, appropriate medical treatment for her various medical conditions from her treating physicians.

## PLAINTIFF'S FIRST CAUSE OF ACTION FOR
## LONG-TERM DISABILITY BENEFITS

46.    With regard to Plaintiff's claims for benefits under the LTD Plan, she continued to work through June 10, 2002.

47.    On June 11, 2002, Plaintiff was forced to stop working because of erosive osteoarthritis of the hands, impairments of her feet, rotator cuff tendinitis, cervical disc disease, back impairments, reflex sympathetic dystrophy, post-traumatic stress disorder ("PTSD"), generalized anxiety disorder and major depression.

48.    In compliance with the terms and conditions of the LTD Plan, Plaintiff timely applied for long-term disability insurance benefits.

49.    By letter dated September 25, 2005, LINA notified Plaintiff that it was approving her claim for the time period of June 21, 2002, through March 13, 2003, and denying her claim thereafter, as the psychiatric medical documentation contained in Plaintiff's file did not indicate a severity of symptoms that would have precluded Ms. Moszczynska for performing her own occupation.

50.    LINA approved Plaintiff's claim from June 21, 2002, through March 13, 2003, due to Ms. Moszczynska's January 7, 2003, surgery and the alleged eight (8) week recovery period "for the correction of the hallux vulgus." However, LINA confused the dates of Plaintiff's two surgeries.

51.    Plaintiff's hallux valgus surgery was performed on June 21, 2002, while the more extensive surgery, the partial excision of the second metatarsal head, excision of the base of the proximal phalanz, extensor tenolysis, flexor tenolysis and an open metatarsal phalangeal joint capsulotomy – which required more than 8 weeks of recovery – was performed on January 7, 2003.

52.    Following the January 7, 2003, surgery, Plaintiff's physical impairments did not disappear and LINA failed to consider the effects of Plaintiff's physical impairments past March 13, 2003.

53.     Although the Group Policy explicitly gives LINA the right to have Plaintiff examined by a physician of its choice, the carrier chose not to exercise this right.

54.     The September 25, 2005, adverse decision was based on a review of the information in Plaintiff's file by LINA's own in-house nurse consultant, who opined, without the benefit of an actual examination, that Plaintiff could perform the job duties of her own occupation.

55.     As a file review consultant, the nurse never examined Plaintiff and as such, her report is medically inferior and scientifically unreliable as compared to the opinions of the claimant's treating doctors.  Moreover, the nurse consultant had a pecuniary interest in finding Plaintiff not disabled, and she was a nurse, not a doctor.

56.     Plaintiff applied for and was awarded Social Security Disability Benefits by the Social Security Administration ("SSA").  Plaintiff's Notice of Award from the SSA is dated March 21, 2005.  Plaintiff was found to be disabled under the Social Security Act with an onset date of June 19, 2003.

57.     The definition of disability under the Social Security Act is more restrictive than the definition of disability found in the LTD Plan.

58.     LINA failed to reconcile the conclusion of the SSA, that Ms. Moszczynska was totally disabled, with its conclusion that she was not totally disabled under a far less stringent definition of disability.

59.     In addition, LINA receives a financial benefit from the Social Security Disability award as a result of the policy offset provisions.

60.     By letter dated January 30, 2006, Plaintiff, through counsel, advised LINA that Ms. Moszczynska intended to submit additional information and comments in support of her appeal, requested that LINA refrain from any further consideration of Plaintiff's claim pending such a submission and requested a copy of Plaintiff's entire claim file.

61.    By letter dated April 14, 2006, Plaintiff, through counsel, formally appealed LINA's September 25, 2005, termination of Plaintiff's LTD benefits by submitting comments and additional medical documentation in support of Plaintiff's claim.

62.    LINA, by letter dated June 13, 2006, upheld its decision to terminate Plaintiff's LTD benefits as of March 13, 2003.

63.    In its second review of Plaintiff's LTD claim, LINA again failed to consider the effects of Plaintiff's physical impairments, instead denying Plaintiff's claim based solely on an inadequate review of the psychiatric medical documentation in her file.

64.    Additionally, LINA added a substantive requirement to the LTD Plan by requiring Plaintiff to use objective information to support her total disability. While Plaintiff's medical records do contain "objective" proof of her disability, LINA's attempted addition of this substantive requirement is a violation of the law.

65.    In its June 13, 2006, adverse determination, LINA concluded that Ms. Moszczynska's psychiatric impairments did not render her totally disabled based upon the opinions of LINA's own in-house file review physician, Randall Unsell, M.D.

66.    As a file review doctor, the Dr. Unsell never examined Plaintiff and as such, his report is medically inferior and scientifically unreliable as compared to the opinions of the claimant's treating doctors. Moreover, Dr. Unsell had a pecuniary interest in finding Plaintiff not disabled.

67.    For a second time, LINA chose to forego its right to have Plaintiff examined. As a result, the only scientifically and medically reliable evidence has been provided by Ms. Moszczynska's treating doctors, all of whom found her to be totally disabled.

68.    Plaintiff, through counsel, by letter dated December 6, 2006, formally appealed LINA's June 13, 2006, denial by submitting comments and additional medical documentation regarding Plaintiff's LTD claim.

69.    By letters dated January 22, 2007, January 30, 2007, and February 28, 2007, LINA notified Plaintiff that the carrier needed additional time to render a decision.

70.    Finally, by letter dated February 28, 2007, LINA issued a final denial of Plaintiff's long-term disability claim and noted that all administrative remedies have been exhausted.

71.    This final denial was based on file reviews conducted by psychiatrist, I. Jack Abramson, M.D., and Dan Gerstenblitt, M.D., who specializes in occupational medicine. Neither of these physicians ever examined Plaintiff.

72.    Once again, LINA chose to forego its right to have Plaintiff examined. As a result, the only scientifically and medically reliable evidence has been provided by Ms. Moszczynska's treating doctors, all of whom found her to be totally disabled.

73.    In seeking to further its own pecuniary interest, LINA has denied Plaintiff of her right to a full and fair review of the denial of her claim, as required by ERISA.

74.    LINA, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. As such, LINA is operating under a significant conflict of interest which had a material effect on its decision-making on this claim.

75.    LINA, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to Plan participants such as Ms. Moszczynska.

76.    The LTD Plan, as an employee welfare benefit plan under ERISA, also owes a fiduciary duty to Ms. Moszczynska and other Plan participants.

77.    The LTD Plan's fiduciary duty requires that it select an insurer/claims administrator who will: administer claims in accordance with plan terms; fairly and objectively apply plan terms and evaluate medical evidence; and comply with ERISA and its regulations.

78.    By allowing LINA to mishandle Plaintiff's claim as it did, the LTD Plan and the Plan Administrator failed in their fiduciary duties to Ms. Moszczynska.

79.    As such, the LTD Plan and the Plan Administrator failed to adequately monitor, control and correct LINA's improper actions.

80.    Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of Plan participants and beneficiaries, and strictly in conformance with the provisions of the Plan.

81.    The adverse claim decisions rendered in the instant action have been made by LINA, which has a pecuniary interest in denying claims. This pecuniary interest created a conflict of interest, which had a direct and important effect on LINA's decision making on Ms. Moszczynska's LTD claim.

82.    Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the Plan and thereby make decisions in accordance with plan language.

83.    LINA's decisions were not supported by the medical evidence and were not supported by the applicable plan language.

84.    LINA's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

85.    Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff, therefore, is entitled to the continued receipt of Long-Term Disability benefits retroactive to March 14, 2003, and continuing to the present under the LTD Plan.

WHEREFORE, Plaintiff respectfully requests the following relief:

a.    That the Court declare and then determine that, under the terms of the LTD Plan, Plaintiff's disability began on June 11, 2002, and that she continues, without interruptions, to be disabled within the terms of the LTD Plan;

b.    That, after making such a determination, the Court grant Plaintiff appropriate legal relief and order Defendants, the LTD Plan and LINA, to compensate Plaintiff for her disability in accordance with the terms of the LTD Plan, retroactive to March 14, 2003;

c.    That the Court award Plaintiff her attorney's fees pursuant to ERISA, 29 U.S.C. §1132(g); and

   d.    That Plaintiff receive such other necessary, proper and equitable relief, including interest, costs and disbursements, as to which she may be entitled.


Dated: November ___, 2007
       Hauppauge, New York


                                         DEHAAN BUSSE LLP

                               By:       _____
                                         John W. DeHaan (JWD 8863)
                                         300 Rabro Drive
                                         Suite 101
                                         Hauppauge, New York 11788
                                         Telephone:    (631) 582-1200
                                         Facsimile:    (631) 582-1228